**RECORD NO. 13-4762**

# IN THE
# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 ℭ𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

CHAD BRADLEY MOORE,

*Defendant - Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE  WESTERN DISTRICT OF NORTH CAROLINA
AT STATESVILLE

**OPENING BRIEF OF APPELLANT**

Matthew Collin Joseph
ATTORNEY AT LAW
725 East Trade Street
Suite 115, Court Arcade Building
Charlotte, North Carolina 28202
(704) 335-8686
butlerlawoffice@aol.com

*Counsel for Appellant*                                    January 6, 2014

**LANTAGNE LEGAL PRINTING 801 East Main Street Suite 100 Richmond, Virginia  23219 (804) 644-0477**
**A Division of Lantagne Duplicating Services**

<u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ..................................................................... ii

STATEMENT OF SUBJECT MATTER JURISDICTION
AND APPELLATE JURISDICTION ......................................................1

STATEMENT OF THE ISSUES................................................................2

STATEMENT OF THE CASE..................................................................3

STATEMENT OF FACTS .......................................................................5

SUMMARY OF ARGUMENT ................................................................9

ARGUMENT ......................................................................................11

    I.    Whether the government proved by a preponderance of the
        evidence that the Defendant-Appellant violated the terms of
        Supervised Release ....................................................................11

STANDARD OF REVIEW ....................................................................12
        Violation two ...........................................................................12
        Violation three .........................................................................15
        Violation four ...........................................................................19

CONCLUSION....................................................................................23

CERTIFICATE OF COMPLIANCE.......................................................24

CERTIFICATE OF FILING AND SERVICE .........................................25

i

<u>TABLE OF CASES AND AUTHORITIES</u>

Page

**CASES**

*U.S. v. Johnson,*
374 Fed. Appx. 434 (4th Cir. 2010) ............................................................12

**STATUTES**

18 U.S.C. § 2 ........................................................................................................2
18 U.S.C. § 3231 ..................................................................................................1
21 U.S.C. § 841 ....................................................................................................2
21 U.S.C. § 851 ....................................................................................................2
28 U.S.C. § 1291 ..................................................................................................1

N.C.G.S. § 13-32.4 .............................................................................................16
N.C.G.S. § 14-33 ................................................................................................13
N.C.G.S. § 14-33.2 .............................................................................................12
N.C.G.S. § 14-33(c)(2) .......................................................................................14
N.C.G.S. § 14-34 ..........................................................................................12, 13
N.C.G.S. § 15A-1340.17 ....................................................................................13
N.C.G.S. § 15A-1340.36 ....................................................................................13

N.C.P.I. Criminal 210.30 ....................................................................................22

U.S.S.G. § 7B1.1 ............................................................................................9, 13

**RULES**

Rule 3(a) of the Federal Rules of Appellant Procedure .......................................1

## <u>STATEMENT OF SUBJECT MATTER JURISDICTION</u><br><u>AND APPELLATE JURISDICTION</u>

This is an appeal from a sentence imposed on September 3, 2013 by United States District Court Judge Richard L. Voorhees after revocation of Supervised Release in the United States District Court for the Western District of North Carolina, Statesville Division.  This Court has jurisdiction pursuant to 28 U.S.C. § 1291 over this direct appeal of a final judgment in a criminal case. The district court had jurisdiction over the case pursuant to 18 U.S.C. § 3231.  Pursuant to Rule 3(a) of the Federal Rules of Appellant Procedure this appeal was taken as a matter of right by filing a timely notice of appeal with the district court clerk.

## STATEMENT OF THE ISSUES

I.     **Whether the government proved by a preponderance of the evidence that the Defendant-Appellant violated the terms of supervised release.**

## STATEMENT OF THE CASE

On August 4, 2008 the Defendant-Appellant, Chad Bradley Moore, pled guilty to Possession with Intent to Distribute Cocaine and Aiding and Abetting in violation of 21 U.S.C. §§ 841, 851 and 18 U.S.C. § 2.  The Defendant-Appellant was sentenced to 50 months imprisonment followed by 60 months of supervised release.

The Defendant-Appellant was alleged to have violated five conditions of supervised release in a petition filed on November 7, 2012.  The addendum to the petition was filed on May 16, 2013.  Violation number one alleged that the Defendant-Appellant was arrested in Iredell County North Carolina on 10-21-12 and charged with the offenses of Assault on a Female and Communicating Threats, a Grade C violation.  (JA 14)  Per the addendum, these charges were later dismissed.  (JA 30)  Violation number two alleged that the Defendant-Appellant was arrested in Iredell County North Carolina on 10-21-12 and charged with the offense of Assault Inflicting Serious Bodily Injury.  (JA 15)  Per the addendum, the Defendant-Appellant was later indicted on the lesser included felony offense of Habitual Misdemeanor Assault, a Grade A violation.  (JA 30)  Violation number three alleged that the Defendant-Appellant was arrested in Iredell County North Carolina on 10-21-12 and charged with the offense of Second Degree Rape.  (JA

3

15) Per the addendum, the Defendant-Appellant was later indicted for the felony offense of Assault Inflicting Physical Injury by Strangulation, a Grade A violation. (JA 30)  Violation number four alleged that the Defendant-Appellant was arrested in Iredell County North Carolina on 10-21-12 and charged with the offense of First Degree Kidnapping.  (JA 15)  Per the addendum, the Defendant-Appellant was later indicted for the lesser included felony offense of Second Degree Kidnapping, a Grade A violation.  (JA 30)  Violation number five alleged that the Defendant-Appellant tested positive for cocaine on 5-29-12 and 10-19-12, a Grade C violation.  (JA 15)

The Defendant-Appellant admitted violation number five and had a hearing on the other alleged violations on September 3, 2013 before the Honorable United States District Court Judge Richard L. Voorhees.  (JA 37)  After the hearing, Judge Voorhees found the Defendant-Appellant to be in violation of the conditions of supervised release on violations number one thru four.  (JA 124-126)  Judge Voorhees revoked the Defendant-Appellant's term of supervised release and sentenced defendant to a term of imprisonment of 60 months.  (JA 134)

The Defendant-Appellant filed a written notice of appeal with the district clerk on September 17, 2013.  (JA 149)

4

## STATEMENT OF FACTS

The Defendant-Appellant Chad Bradley Moore's term of supervised release began on September 11, 2012. He was assigned to Probation Officer Gregg Henderson in the Western District of North Carolina. On or about September 20, 2012 the Defendant-Appellant was residing with his girlfriend Cassie Rae Mayes on Fern Hill Rd in Troutman North Carolina. (JA 39) Sometime after 11 p.m. that evening, the couple got into an argument that eventually turned into a physical altercation. It is disputed by both sides the cause of the argument. The Defendant-Appellant testified that he became upset after learning that Cassie Mayes had Hepatitis C and asked her to leave the residence and she refused. (JA 82-86) Cassie Mayes testified that the argument started after they were both doing cocaine and the Defendant-Appellant believed that she hid his cocaine. (JA 38-41) The Defendant vehemently denied this allegation. (JA 87)

Cassie Mayes stated that after the Defendant-Appellant became upset, she had sex with him to calm him down. According to her, he got upset after having sex because she couldn't find her lighter and then he struck her in the side of the head. (JA 43) Then, she said he struck her several more times and she curled up in a ball to block his blows. At some point, she said the Defendant-Appellant tried to suffocate her by pushing her head down in the couch. She said she was able to

5

get him off of her after she lied and told him she hid his cocaine outside the residence. This was her plan to get outside to scream for help. (JA 44-45) According to Cassie Mayes, the Defendant-Appellant followed her outside. (Id) She stated that while outside the residence, he realized she was lying about hiding the cocaine and began to drag her naked in the yard by her hair. According to her, he told her he would break her neck and attempted a sleeper hold but he stopped because she quit screaming. (JA 47-48) Again, the Defendant-Appellant vehemently denies this.

The Defendant-Appellant admitted to assaulting Cassie Mayes. (JA 86) He stated that he punched her several times in her leg and arm. He also poked her in her eyes and facial area several times. (JA 87) The Defendant-Appellant further admitted that at some point they went outside and continued to argue. He did not forcibly remove her from the residence. Cassie Mayes testified that she voluntarily went outside with the Defendant-Appellant. He did admit that once they went outside the residence they continued to argue and he hit her several more times in the arm and legs, urging her to leave the residence. (JA 88)

After the altercation, the Defendant-Appellants father (who resided next door) came over to the residence and spoke to them individually about the argument. He spoke to Cassie Mayes outside the residence and spoke to the

6

Defendant-Appellant inside the residence.  Cassie Mayes stayed on the porch while the Defendant-Appellant and his father spoke inside the residence.  She did not tell his father about her injuries.  She never told his father that she needed help. Despite having an opportunity to leave, she never left the residence.  (JA 76-79) The Defendant-Appellant's father remained at the residence for about 30 minutes. (JA 89)   After the Defendant-Appellant's father left the residence, the couple remained there the entire night.

The next morning the Defendant-Appellant awoke and went to work. Sometime after 8:00 p.m. on October 21, 2012 Cassie Mayes decided to go to the Iredell Memorial Hospital.  (JA 52)  Cassie Mayes had cuts scrapes and bruises to her face, arms, legs and buttocks.  She also complained of a sharp shooting pain on the right side of her neck, "the base of her skull."  (JA 58)  Cassie Mayes didn't suffer any broken bones, long term injuries or head trauma.  (JA 80-81)

Cassie Mayes gave a written statement to Deputy Dominic Landis with the Iredell County Sheriff's Office at the hospital on October 21, 2012.  (JA 103)  She never mentioned to him that she and the Defendant-Appellant were allegedly doing drugs or that she was addicted to pain medication.  (JA 105)  Furthermore, no one from the Iredell County Sheriff's Office ever took a written statement from the Defendant-Appellant.  (Id)  An arrest warrant was issued in State Court and the

Defendant-Appellant was subsequently arrested and released on bond. Officer Barber filed a petition for the violation report on November 7, 2012. The Defendant-Appellant was arrested on November 16, 2012 on the petition and remained in custody. (JA 9-10)

# SUMMARY OF THE ARGUMENT

The Defendant-Appellant contends that there was insufficient evidence for the District Court to find by a preponderance of evidence that he committed the New Law Violation in number two in the addendum to the Petition, a Grade A violation. The Defendant-Appellant felony state court charge of Habitual Misdemeanor Assault was based upon his prior criminal record and not his actual conduct as described in Note 1 under the commentary to U.S.S.G § 7B1.1. The Defendant-Appellant admitted to assaulting Cassie Mayes which is a misdemeanor assault punishable by up to 150 days imprisonment. Based on the Defendant-Appellant's actual conduct, this violation should have been a Grade C violation, not a Grade A violation.

The Defendant-Appellant contends that there was insufficient evidence for the District Court to find by a preponderance of evidence that he committed the New Law Violation in number three in the addendum to the Petition, a Grade A violation. The testimony from the alleged victim Cassie Mayes did not describe her actually being strangled. She never said that the Defendant-Appellant strangled her. At best, her testimony described the potential to be strangled if she didn't stop screaming. The Defendant-Appellant also denied strangling her. According to Cassie Mayes, the injuries to her neck occurred from him trying to

twist her neck; otherwise she had no visible signs of strangulation. The evidence did not support the Courts findings in regards to this violation.

The Defendant-Appellant contends that there was insufficient evidence for the District Court to find by a preponderance of evidence that he committed New Law Violation in number four in the addendum to the Petition, a Grade A violation. The Defendant-Appellant never restrained or removed Cassie Mayes on October 20, 2012. The indictment from the state court charge of second degree kidnapping alleged that he removed Cassie Mayes from one place to another for purpose of terrorizing her. Cassie Mayes testified that it was her idea to lie to the Defendant-Appellant to get him outside. The Defendant-Appellants actions did not meet the definition of terrorizing. Furthermore, there is no evidence of the Defendant-Appellant removing or restraining Cassie Mayes for the sole purpose of terrorizing her. The evidence did not support the Courts findings in regards to this violation.

## **ARGUMENT**

**I.**     **Whether the government proved by a preponderance of the evidence that the Defendant-Appellant violated the terms of Supervised Release.**

## STANDARD OF REVIEW

The Fourth Circuit Court of Appeals reviews the district courts finding that a defendant violated a condition of supervised release for clear error. . ." *U.S. v. Johnson,* 374 Fed. Appx. 434 (4th Cir. 2010)

## Violation two

The Defendant-Appellant contends that there was insufficient evidence for the District Court to find by a preponderance of evidence that he committed violation number two in the petition.  As alleged in the Addendum to the petition for warrant for offender under supervision, violation number two states "New Law Violation."  Specifically, the addendum alleged that the Defendant-Appellant was originally charged with the offense of Assault Inflicting Serious Bodily Injury on 10-21-2012, but was later indicted on "the lesser included felony offense of Habitual Misdemeanor Assault" on 3-11-2013 (JA 30).  This was alleged to be a Grade A violation.

According to North Carolina General Statutes (N.C.G.S.) § 14-33.2 the offense of habitual misdemeanor assault is committed if a "person violates any of the provisions of N.C. G. S. § 14-33 and causes physical injury, or N.C.G.S. § 14-34, and has two or more prior convictions for either misdemeanor or felony assault…" within 15 years of the current offense date.  Violation of this statute is a

12

Class H felony punishable by up to 39 months imprisonment. (See N.C.G.S. §
15A-1340.17). N.C.G.S. § 14-33 and 14-34 are misdemeanor assaults punishable
by up to 150 days imprisonment. (See N.C.G.S. § 15A-1340.36). Therefore,
under § 14-33.2 a person's misdemeanor assault violation is only enhanced if they
were convicted of two previous assaults within 15 years of the current violation.
The felony offense is based on the person's criminal history and not the nature of
the assault.

U.S.S.G. § 7B1.1 list three grades of probation and supervised release
violations. Grade A violations includes conduct violating federal, state or local
offenses whose term of imprisonment exceeds 20 years, or whose term of
imprisonment exceeds one year and "(i) is a crime of violence, (ii) is a controlled
substance offense, or (iii) involves possession of a firearm or destructive device…"
Grade B violations includes conduct that violates federal, state or local offenses
whose term of imprisonment exceeds one year. Grade C violations  includes
conduct that violates federal, state or local offenses whose term of imprisonment
does not exceed one year, or any other violation of conditions of supervised
release. Application note 1 under the commentary of U.S.S.G. § 7B1.1 says the
"grade of violation does not depend upon the conduct that is the subject of criminal
charges or of which the defendant is convicted in a criminal proceeding. Rather,
the grade of the violation is to be based on the defendant's actual conduct."

13

During the hearing for the alleged supervised release violations, the Defendant-Appellant never denied assaulting Cassie Mayes. The Defendant-Appellant testified on direct examination that he was upset after learning that Cassie Mayes had Hepatitis C. (JA 84)  After he confronted her about it, he punched her in the leg and wanted her to leave the residence. The Defendant-Appellant stated,

> I punched her again in her legs. I started punching her in the arm. We ended up being forceful with each other. She started throwing stuff around and we ended up outside yelling and screaming. I admit, I took my hand, my fingers and put them together and I poked her in her eyes, above her eyes a numerous amount -- a numerous amount of times. I was very upset.

Cassie Mayes admitted that she suffered no broken bones, no head trauma or any long term injuries.  Her injuries included cuts, scrapes, bruising and swelling which all healed. (JA 80-81)

The Defendant-Appellant contends that his actual conduct in regards to assaulting Cassie Mayes should have been a Grade C violation rather than a Grade A violation.  He was originally charged with Assault on a Female on Cassie Mayes in Iredell County District Court based on his actions on October 20, 2012.  He admitted that he committed the Assault on a Female of Cassie Mayes in violation of  N.C.G.S. §14-33(c)(2) which is punishable by a term of imprisonment of up to 150 days.  The Defendant-Appellant potential habitual misdemeanor assault status

14

or enhancement is based on his criminal history not his actual conduct. As of the date of the hearing for the supervised release violation, the state court charges were still pending and he had not been found guilty. The Court in this case did not base its findings in regards to this violation on the Defendant-Appellants actual conduct.

Furthermore, the Government never submitted any evidence during the hearing that the Defendant-Appellant had two prior convictions within 15 years for assaults. The Government only asked during its argument that the court  take judicial notice of an assault on a female conviction from June 4th 1998, and an assault on a government official conviction from March 30th 2000.    (JA 120) There was clearly insufficient evidence for the District Court to find by a preponderance of evidence that he committed violation number two in the report.

## **Violation three**

The Defendant-Appellant contends that there was insufficient evidence for the District Court to find by a preponderance of evidence that he committed violation number three in the report. As alleged in the petition for warrant for offender under supervision, violation number three states "New Law Violation." Specifically, the addendum alleged that the Defendant-Appellant was originally charged with second degree rape which was dismissed on 3-11-2013. However,

the Defendant-Appellant is now charged with the felony offense of assault inflicting physical injury by strangulation.

According to N.C.G.S. §13-32.4, "any person who assaults another person and inflicts physical injury by strangulation is guilty of a Class H felony" punishable by a term of imprisonment of up to 39 months. The indictment from Iredell County North Carolina alleges that on or about 10-20-2012, the Defendant did "assault Cassie Rae Mayes and inflict physical injury, red marks, cuts, and bruises, by strangulation, using his arm to squeeze her throat." (JA 137)

Cassie Mayes testimony during the hearing was contradictory and she never stated she was strangled. The Defendant-Appellant never admitted to strangling Cassie Mayes and he contends that her testimony did not amount to proof of strangulation. She testified that during the altercation inside the residence the Defendant-Appellant took his hand and twisted her nose shut while the palm of her hand was in her mouth. She stated she then turned her mouth to get the palm of his hand off her mouth. (JA 44-45) This conduct even if believed certainly does not amount to strangulation or even an attempt. It was brief and not repeated conduct. There was no testimony that the Defendant-Appellant had the intentions of strangling her at that point. According to Cassie Mayes, this was a very brief part of a physical altercation between her and the Defendant-Appellant that went on for

16

several minutes.  Cassie Mayes never lost consciousness or experienced difficulty breathing afterwards.  Also, this was not the alleged actions that were a part of the indictment for assault inflicting physical injury by strangulation.

Cassie Mayes also testified on direct examination that once they were outside the residence, the Defendant-Appellant grabbed her around her neck.  But when she described the altercation she actually indicated that he was "mashing on my chest" with his arm and not her neck. (JA 47)  She also admitted on cross examination that he never actually put his hands around her neck.  She said he twisted her neck to stop her from screaming.  She stated "he started putting me like a sleeper hold and he said he was going to put me to sleep if I didn't quit [screaming]…I quit screaming at that point because I was scared he might choke me…"  She then testified that she "she gave up then and let him drag me on into his house."

Based on this testimony there was never any strangulation.  Her testimony if believed indicates there was a potential threat of strangulation but never actually inflicted on her.  Cassie Mayes stated that the Defendant-Appellant told her that "he would break her neck if ..[she] didn't stop screaming." (Id) She never testified that the Defendant-Appellant indicated to her that he was going to strangler her.  She indicated that she was always able to breathe.  On cross-examination she

testified that she wasn't even sure if he used his arms around her neck area.  She described the Defendant-Appellant right fist to the left of her neck as him twisting her neck.  When questioned about how this is possible, she stated, "I don't know.  I don't remember exactly."  She then for the first time stated that she couldn't see what the Defendant-Appellant was doing because her eyes were "swelled shut." (JA 44-45) The actions described by Cassie Mayes if believed does not amount to strangulation. There is a difference between trying to injure someone by causing pain to their neck and actually attempting to strangle someone.

Despite the erratic, inconsistent and contradictory testimony of Cassie Mayes the Court found by a preponderance of evidence that the Defendant-Appellant committed violation number three by "holding her nose closed and pushing her head to the side with his palm over her mouth thereby restricting her airways."  The Court also found that Defendant-Appellant used a sleeper hold by placing "his forearm on her neck as he was twisting her head and pulling her hair and threatening her…restricted her breathing and amounted to a strangulation…"

Defendant-Appellant contends that this finding by the Court was not supported by the evidence.  Cassie Mayes through all of her testimony never once said the Defendant-Appellant strangled her.  There was no evidence presented by the Government that Cassie Mayes suffered any marks or bruising around her neck

consistent with strangulation.  The only evidence presented was Cassie Mayes testimony that her neck was sore from the Defendant-Appellant trying to twist her neck, and not from attempting to or actually strangling her. (JA 57-58)  The Government failed to prove by a preponderance of evidence that he committed violation number three in the petition.

**Violation four**

The Defendant-Appellant contends that there was insufficient evidence for the District Court to find by a preponderance of evidence that he committed violation number four in the petition.  As alleged in the petition for warrant for offender under supervision, violation number three states "New Law Violation." Specifically, the addendum alleged that the Defendant-Appellant was originally charged with first degree kidnapping which was dismissed on 3-11-2013. However, the Defendant-Appellant is now charged with the felony offense of second degree kidnapping, a class E felony punishable by a term of imprisonment of up to 88 months.

The indictment from Iredell County North Carolina under second degree kidnapping states that the Defendant-Appellant kidnapped Cassie Rae Mayes by removing her from one place to another without her consent and for the purpose of terrorizing her. (JA 138)  Under the North Carolina Pattern Jury Instructions (N.C.P.I.) Criminal 210.30, terrorizing "means more than just putting another in

19

fear; it means putting that person in some high degree of fear- -a state of intense fright or apprehension." (JA 143-144)

The Court found that the Defendant-Appellant committed violation number four.  The Court stated that the Defendant-Appellant confined Cassie Mayes by "pressing his knees against her arms while she was in a position on her back and she attempted to struggle and move to the side to escape but was prevented by him from doing that."  The Court also found that Cassie Mayes was confined by the Defendant-Appellant telling her that she couldn't leave the premises.

The Defendant-Appellant contends that he never confined Cassie Mayes. Furthermore, confining or restraining was not alleged in the indictment.  Cassie Mayes never testified that she was restrained or confined.  In fact she had several opportunities to leave the residence but did not.  (JA 80) The Defendant-Appellant did not remove Cassie Mayes from the residence.  She testified that during the physical altercation she lied to the Defendant-Appellant to follow her outside to get his cocaine.  According to her own testimony, it was her idea to get him outside. (JA 45).  He did not physically remove her from the residence against her will. More importantly, according to the jury instructions for second degree kidnapping, the removal or restraint has to be for the sole purpose of terrorizing the alleged victim. (JA 143-144)

The Defendant-Appellant contends that Cassie Mayes was never placed in a high degree of fear or a state of intense fright or apprehension as required for terrorizing. There was no evidence of any weapons involved. Based on her testimony the assault occurred inside the residence and continued outside the residence after she lied to get the Defendant-Appellant outside the residence. She then testified that the Defendant-Appellant drug her back to the residence, she cleaned herself up and put clothes on. (JA 48) That was the end of the assault. So based on her testimony, the only movement against her will would have been the Defendant-Appellant dragging her back to the residence. But there is no evidence (even if what she said was true) that this was done for the sole purpose of terrorizing Cassie Mayes. Her own testimony proves that it was not. By her own admission she stated "he drug me the rest of the way in the house and proceeded to tell me to go wash off all the blood, to go clean up and put some clothes on." (JA 48) The assault concluded at that point. There were no other allegations of assault while they were back inside the residence.

The Defendant-Appellant contends that Cassie Mayes testimony fabricated a large portion of the facts of the incident on October 20, 2012. Her testimony was inconsistent and did not accurately describe the facts. The Defendant-Appellant testified that they both voluntarily went outside and continued to argue. He stated

21

that he did assault her outside but she also assaulted him outside.  He further testified that he did not drag her back to the house.  The Government had the burden of proving the second degree kidnapping beyond a reasonable and they failed to do so. The evidence was insufficient that he removed or even restrained here. If this Court determines that he did remove or restrain her, the evidence was certainly insufficient that it was done for the sole purpose of terrorizing here. Furthermore , the Defendant-Appellant contends that the evidence was insufficient to fit the definition of terrorize within N.C.P.I. Crim. 210.30.  Defendant-Appellant contends that this finding by the Court as to violation four was not supported by the evidence.

## **<u>CONCLUSION</u>**

Defendant-Appellant contends that the Government did not prove by a preponderance of the evidence that he violated the terms of supervised release. For the foregoing reasons, the Defendant-Appellant respectfully urges the Court to reverse the decision of the District Court and remand the case to the District court for sentencing on the Grade C violations.

This the 6th day of January, 2014.

Respectfully submitted,

/s/_____
Matthew Collin Joseph
ATTORNEY AT LAW
725 East Trade Street
Suite 115, Court Arcade Building
Charlotte, North Carolina 28202
(704) 335-8686
butlerlawoffice@aol.com

*Counsel for Appellant*

23

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 4,325 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This the 6th day of January, 2014.

/s/_____
Matthew Collin Joseph
ATTORNEY AT LAW
725 East Trade Street
Suite 115, Court Arcade Building
Charlotte, North Carolina 28202
(704) 335-8686
butlerlawoffice@aol.com

*Counsel for Appellant*

## CERTIFICATE OF SERVICE

I, Norman Butler, do hereby certify that I have filed the required copies of the foregoing Opening Brief of Appellant  via hand delivery and electronically using the Court's CM/ECF system which will send notification of such filing to:

Ms Amy Ray
Assistant United States Attorney
100 Otis Street
Asheville, NC 28801
Email: amy.ray@usdoj.gov

This the 6th day of January, 2014.

/s/_____
Matthew Collin Joseph
ATTORNEY AT LAW
725 East Trade Street
Suite 115, Court Arcade Building
Charlotte, North Carolina 28202
(704) 335-8686
butlerlawoffice@aol.com

*Counsel for Appellant*